Good morning everyone. This panel will hear four cases this morning, and we may or may not take a break, so don't go anywhere just in case. The first case today is Shelton v. City of Locust Grove, number 245076. Counsel, you may proceed. Good morning. May I split my time with 11 minutes and reserving four? Well, we'll try to get you there if you get yourself there, but we'll see. All right. Thank you. May it please the court, my name is Mark Lyons. I represent appellants Deanna Shelton and Chloe Jennings. They have brought this 1983 action based on actions of police officers Hall and Russell, Mayor Williams, and the City of Locust Grove. In August of 2022, Ms. Shelton came home to find her two dogs, Sancho and Zeke, in a front yard with police officers there. The police officers, and Ms. Jennings was there, police officers advised her that the dogs were at large and they were going to give her $175 tickets for that or she could abandon the dogs. Believing that the police officers, and taking them at their word as alleged in paragraph 20 of the Second Amendment complaint, that they were going to take the dogs to the prior dog pound and hold them there, they agreed to temporarily surrender the dogs only under the promise that the dogs would be taken to the dog pound so then they could figure out what to do with them. Instead, the police officers lied to them and what they did was they rounded up the dogs, took them outside city limits, shot them both in the head, and left them for dead. Eight days later, Sancho came back to the owner's home, which was half to a mile away, and Deanna Shelton called the police and said, hey, what happened? My dog is here. Officer Hall shows back up and she says, what did you do to my dogs? And he said, well, we put them down. Well, you said you were going to take them to the pound. Well, we did. Well, one of them turned up back here at the back of my house and he said, that's not possible. They were both dead when we threw them out. And she said, well, he's back here. And Hall said, get out of the way and I'll finish him off. That, under those circumstances, that was a seizure that deprived, meaningfully deprived, both Jennings and Shelton of their possessory and property interests in their effects. What possessor or ownership interests did Ms. Jennings have? No ownership. It's an informal arrangement and under But the complaint states that the dogs were fully owned by Shelton with the consent of Jennings. How should we be thinking about that? Well, that is By the way, counsel, does the complaint anywhere say co-ownership? Does that word ever use? That word is not used, but a reasonable inference, which the trial court is required to apply to the terms in the complaint. That's what he's supposed to do, is to look at reasonable inferences. When paragraph 13 and 14 say Ms. Jennings, female dog, gave birth to Sancho and Zeke and that she was there, she lived there at the house. She was in possession of the dogs along with Deanna Shelton. The reasonable inference from that complaint is that they had an informal arrangement. The entirety of the ownership of the dogs is based on what Ms. Jennings writes she may have by virtue of her dog giving birth and then Ms. Shelton's ownership and possession. And as the case law for standing says, you only need to have a plausible complaint of standing or a plausible allegation in the complaint. That's what the Carter v. Health Point So let's assume that we'll move past the ownership issue. If I understand your argument correctly, it's that the abandonment here was involuntary, right? Because it was predicated on a Fourth Amendment violation. Is that a correct understanding of your argument? That's the basic argument. We deny that there was an abandonment within the meaning that the trial court applied to it because the fundamental misunderstanding the trial court applied was abandonment meant that the officers had the authority to seize the dogs without a warrant and then immediately do an extrajudicial killing of them. And nowhere factually is that either alleged in the complaint that they agreed to that, that they were advised of it, or that the officers have authority to do that. But the complaint does state that the dogs were abandoned. It uses the word abandoned. And again, under the Conley v. Gibson standard where it says the pleading requirements are not for one misstep by plaintiff's counsel or by counsel in pleading their complaint. Isn't that the notice pleading case? Isn't Conley, isn't Iqbal Twombly the governing authority? It is. It's not Conley, is it? I think Conley pervades all of the notice, all of the pleading standards, whether it's Iqbal and Twombly or whatever it is. And if I'm wrong, so be it. But that's my understanding. That's your argument. Yes, sir. What if the dogs had been taken to the pound and immediately adopted? Would you have a claim at that point? Well, they couldn't be immediately adopted under the notice provisions. There's got to be 72-hour notice. The owner's got to be given notice. If all the notice procedures were filed, then there wouldn't be a substantive procedure. Well, is that for a true stray dog where nobody knows the ownership? In other words, you don't adopt a dog until you find out if an owner's going to come in and say, have you seen my border collie or whatever? Well, under your scenario, if a dog without a tag is roaming the streets and the police officer sees it and takes it to the pound, I think they've got to give publication notice that they've seized the dog and here's the description of it and we intend to destroy it unless somebody comes and claims it. Publication notice? Are you talking newspaper? Some sort of notice. Well, you're very vague on that and I need some precision. Are you saying that there's law that says that when a stray dog is impounded, there has to be newspaper publishing? I think that they've got to make a reasonable effort to find an owner. I don't think that the police officer can go around town and just seize dogs. Are you talking about the local ordinances? Yes. The city of Locust Grove ordinances require 72 hours of notice. All right. Well, let me change my hypo then to accommodate you and say that on hour 73 the pound adopts the dogs to someone else. Would you have a claim of action at that point? Arguably not. Well, what's the arguably yes part of that? Why would you possibly have a claim? Well, assuming that the notice requirements were fully complied with and that if there's, I mean, I guess if there's a known owner, then notice has to be given to the known owner. If it's a stray dog, I assume under your theory that maybe hour 73 the dog could be adopted out. The answer is that you wouldn't have a claim because the dog has been abandoned at hour 73. Is that not right? No, sir. Absolutely. I completely disagree with the fact that the dog has been abandoned. At that point, the owner may not know where the dog is. Well, how many days, weeks, months or years until the dog is abandoned? I think abandonment has to be a voluntary act on behalf of the owner, not lack of knowledge where the dog is. Under your scenario, I'm reading it to mean that a dog is gone, it's in the pound, the owner doesn't know where it is to know where to claim it. Well, could these two dogs ever have been abandoned by Sheldon? Could they have what? Been abandoned once they went to the pound. Did her inaction ever, in your judgment, mean that the dogs were abandoned? No, sir. So if they had adopted the dogs after a month, you would say you still have a claim? If the notice requirements with actual notice of the consequences of failing to come retrieve the dogs after whatever the notice provisions are occurred and Ms. Shelton didn't pick the dogs up, yes, that would be abandoned. I don't know how they ever adopt a dog then, and if for fear of litigation. I can't answer all the parameters to that yet, Your Honor, but it obviously happens. Counsel, could I shift to something else that's been confusing me about this case? I didn't find the district court opinion all that clear on how it was thinking about standing because at one point it was talking about constitutional standing, and then we also have reference to Fourth Amendment standing. So let me just ask you a couple of questions about that. Assuming Ms. Jennings didn't own the dogs, and I know you disagree with that, but assuming that she didn't own the dogs, how does she have Article III standing? She has a possessory interest. I just said assuming she doesn't own the dogs, how does she have Article III standing? You can't answer the question by saying that she owns the dogs. I was intending to be very case law specific with possession. Fine. Let's hear your argument. Why isn't this an Article III standing case as opposed to a Fourth Amendment standing case? I don't know how to answer your question, Judge. Well, isn't that what we have to start with? Does the plaintiff have standing? Do we have Article III jurisdiction here if they don't own the dogs? What paragraph 20 says is an acknowledgment by Officer Hall that he knew that Jennings had some right, title, or interest in the dogs because he asked her permission. You're not answering the question, counsel. I'm not intentionally evading it, so I'm sorry. Well, then let's start over. I'm asking you if they don't own the dogs, does this court have jurisdiction under Article III standing? Probably not. They would not. You would not. So what was the district court getting at when it said there was no constitutional standing? Was it Article III? Was it the Fourth Amendment? I have no clue, Judge. Because he resolved so many disputed issues of fact, and he made a decision that was clearly against the weight of at least the clear complaints, the clear allegations on the face of the complaint, plus all reasonable inferences from those for a plausible claim under Iqbal and Twombly. I just think that he violated the basic rules of interpretation for a 12B6 motion. It should be an issue of law and not fact. He decided it, in my opinion, based on fact. I thought that your argument was that any abandonment here wasn't voluntary because it resulted from a Fourth Amendment violation. That is correct. What is the Fourth Amendment violation? The killing of the initial seizing of the dogs and then killing them. And I've got an additional site for a case called Maldonado v. Fontaines, 568 F. 3rd, 263. And at 270 to 271, it says the killing of a person's pet dog or cat by the government without the person's consent is a seizure within the meaning of the Fourth Amendment. So the initial – I thought that your argument was that because Ms. Shelton – this is how I understood your argument. Ms. Shelton abandoned the dogs under threat, essentially that if you don't abandon them, you're going to get this ticket. Can't pay the ticket. All right, well, I've got to abandon the dogs. So that the threat of the ticket was the – or the citation was the Fourth Amendment violation because there was no probable cause for the ticket. Am I misunderstanding your argument? You've got the beginning of it. The rest of it is that within that abandonment requirement, I give you the tickets or you abandon the dogs, was the intention of the officers to go out and immediately kill the dogs. That is part and parcel of the Fourth Amendment seizure violation that happened there without a warrant, which is presumptively unreasonable. And there was no, you know, under an exigent circumstances situation where you've got a vicious growling dog that's trying to, you know, bite the police officers. You may have authority to, you know, kill the dogs in. You don't have that circumstance here. So the seizure was accomplished with the desire to kill the dogs at the same time, which was never communicated. The abandonment can't be voluntary. I think – I mean, I understood your argument similarly, or at least part of it was that the officers didn't have probable cause to issue the dog at large tickets. Isn't that part of what you're arguing here? That is part of my argument. Okay. Could I just focus on that? Yes, sir. Didn't the police report show that there was probable cause? I just – well, I don't believe so. I don't believe dogs standing in the front yard of their house as pled in my complaint. No, I didn't ask about the complaint. I said, does the police report support probable cause? It would probably support probable cause to issue a ticket only. I agree. And is it appropriate for the district court and this court to consider the police report? No, sir, because it has disputed issues of fact in it. Well, you rely on the police report in your complaint. You reference it in your complaint. In one paragraph. I know, but you did. And why doesn't that allow us to look at the police report? Well, because – I mean, you want us to look at the police report. You quote the police report. I get it. But I'm writing that fine line between making conclusory statements that the city of Locust Grove, by the chief policymaker, is okayed this Fourth Amendment violation to get to plead a policy in custom and also then making sure that I get sufficient facts under Iqbal and Twombly to then cross over that line to say, since I quoted from that to show the policy in custom instead of the motion to dismiss saying, you know, you haven't pled a policy in custom, I then drag in the police report. Okay. Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. May it please the court, Thomas LeBlanc on behalf of the appellees. In this matter, the district court appropriately utilized the Twombly-Iqbal standards to assess a motion to dismiss. The trial court appropriately determined that there were insufficient factual averments in the petition to establish standing for either Jennings or Shelton. What kind of standing? Well, Your Honor, it is interesting that it's not entirely clear what the trial court did. The trial court clearly focused, I think, on the Fourth Amendment aspect of the case as did much of the briefing. But regardless, there is no legally protected interest that either party had under the facts averted in the Second Amendment complaint. So there's simply no standing regardless of how you look at it, Your Honor. If there's no legally protected interest, then the court lacks, I mean, the parties lack standing and the court lacks jurisdiction to resolve it, and it should be dismissed. As to both Jennings and Shelton? Correct, Your Honor. I think with respect to Jennings, I think it's very clear when you look at the factual statements in the amended complaint, the only statement concerning her interest is a purely speculative statement that she may have some right or interest. That's not sufficient to withstand a motion to dismiss. And it contradicts the clear, unequivocal statements in the petition or complaint that at all times relevant, Shelton had ownership and possessory interest exclusively. So if we conclude that Ms. Jennings did not have any ownership interest at all, is the correct disposition as to her, in your view, an Article III standing disposition? I think the correct disposition is a recognition that she lacks standing and the case should be dismissed. Okay. And is that different as to Jennings? I'm sorry, as to Shelton? Shelton does go further. I mean, the analysis, I think, has to go further because initially she did have an ownership and a possessory interest. So she did have a legally protected interest at the outset. And what is clear, and we cited a number of cases, the Denny case, the Burbage case, the Garzun case, Hernandez-Jones, we've cited a litany of property, possessory, Fourth Amendment analysis by this court where the court has repeatedly acknowledged that where an individual may have ownership and or possessory interest in the property being seized, once there is an affirmative disclaimer, an affirmative disavowalment, an affirmative abandonment of that property, then standing under the Denny case in particular, that party no longer has standing to make any complaint of any alleged Fourth Amendment violation premised on an alleged unlawful seizure of that property. Because at that point, they have abandoned the property. And now you're back to the situation where, well, if you have no legal interest in the property, then you cannot complain that it was seized by law enforcement. But why shouldn't we conclude here that the abandonment was involuntary? Because the facts both alleged in the complaint and incorporated in the police report make it very clear that this was a voluntary abandonment. She had a choice, even under her own allegations, I can maintain my interest in these dogs, accept a citation from law enforcement because they are at large, and there's no serious question the dogs were at large, there was a violation of the ordinance, and there was probable cause to issue those citations. Well, counsel, let me just ask you, do you need the police report to avoid reversal on that issue? No, I do not, Your Honor, because I think even if you look at paragraph 20, I believe, let me make sure I get my paragraphs right. Yeah, if you look at paragraph 20, Ms. Shelton advised she could not afford to pay the tickets and was forced under threat of unwarranted and illegally issued charges to abandon the dogs. So Plaintiff Shelton acknowledges she abandoned the dogs. She then tries to explain that away by saying she couldn't afford to pay the tickets. There's nothing about that concern. Well, but isn't the voluntariness question tied to whether the officers had probable cause to issue the tickets? In other words, if they didn't have probable cause to issue the tickets, but they're threatening to ticket her anyway, why doesn't that make the abandonment or stray dog decision involuntary? Because at this stage, two reasons. One, at this stage in this proceeding, she doesn't have to abandon these dogs. That's not her only option, right? She can accept the citations, go to municipal court, challenge those citations, argue that they were not at large, they're in my yard. I mean, she's not being coerced or forced. Is it your position that if the officers, if the dogs had been confined to the backyard, they weren't at large at all, but the officers were nonetheless threatening to ticket her for the dogs being at large, that that has nothing to do with whether it was a voluntary abandonment? I think at that point, Your Honor, there is a potential issue if the officers are clearly coming on to her private property for the purpose of seizing those dogs with no reason or rationale. I mean, that's clearly not the facts of this case, but that would raise some forthcoming concerns. That actually is what I'm getting at in terms of the police report, because the police report says the dogs were running around on, I believe it was Lisa Grass's property, and it looks like there might be a basis to issue a ticket based on the police report. But I didn't see that. Maybe I missed it in the complaint. So I guess there's two things I'm interested in. Is it appropriate for the court to look at the police report on this issue? And if it isn't, where does that leave you? It clearly is appropriate for the court to look at the police report, and there are actually three cases that say so. The district court, in its opinion, cited Prager v. Lefevre for that proposition. We cited, I think, the Jacobson case and also the Mayfield case, which plaintiffs cited in their papers, 826 F. 3rd, 1252. In all three of those cases, this court has recognized that when the plaintiff refers to a document in their complaint, that the court should look at that document, provided the document is central to the claims of the plaintiff, which unquestionably that's the case here. The police report clearly acknowledges the reason they were called out was the dog-at-large complaint from Ms. Grass. Both officers document when they arrived the dogs were on Ms. Grass's property, not on Ms. Shelton's property. And, in fact, if you look at paragraph 16, even the plaintiff alleges in paragraph 16 of the Second Amendment complaint that when Ms. Shelton arrived, the police cars were in front of Ms. Grass's home, Officer Hall and Russell were in her front yard speaking with Ms. Jennings. Those allegations in paragraph 16 actually match the statements by both officers in the police report. That didn't say anything about where the dogs were. Pet dogs Sancho and Zeke were present. So paragraph 16, the first three sentences were read. Present where? Aren't they entitled to inferences in their favor on that issue? Generally, yes. Here, though as recognized by the three cases we cited, when the plaintiff adopts and incorporates into their complaint the police report document, it is entirely appropriate for the trial court and for this court to review that document. Is it possible to read them together as sort of snapshots in time? I mean, that's sort of how I looked at it, that the complaint got at some of the allegations and the police report got at another moment in time. That's correct. And I will acknowledge that if this were a situation where there was some statement in the police report that lacked reliability for whatever reason and clearly contradicted a statement or a factual assertion by the plaintiff in their complaint, I think viewing the facts in the light most favorable to the plaintiff, the court would potentially give more deference to the statement by the plaintiff in the complaint. You know, the police report doesn't help you across the board. I mean, there's reference in the police report to the dogs belonging to Chloe. What are we supposed to do with that? Again, I think you look at the statements in the complaint itself in that regard where they disagree. We have circuit authority in a case called Broker's Choice that if a document is incorporated with the complaint and there's conflict, it's the document that controls and not the complaint. I think when you look at the... Are you familiar with that case? No, sir. But I think when you look at the document, the police report in its entirety, it is supportive of the defendant's position consistently because even if you assume, which is not pled, that Ms. Jennings did have some ownership interest in the dogs, it's also clear in paragraph 16 that she too abandoned that interest when she acquiesced to the dogs being taken. And in fact... Let me ask you about the abandonment because you've referenced 16 and 20, and you read part of 20, which is the bit about not being able to pay for the tickets, but then you didn't read the part about it was a conditional abandonment, which is temporarily agreed they could be taken to the prior dog pound until they could figure out what to do. And while there, the dogs would be treated humanely, which that's not a complete abandonment. What that's really saying is maybe we can beg, borrow, or steal some money and get the dogs out and everybody, my mayor influence or whatever else will come to my rescue, all defeated by taking the dogs and immediately shooting them. I have two responses to that, if I may, Your Honor. First, as the district court pointed out, the bring the dogs to the prior pound was a statement in paragraph 16 made by Ms. Jennings, and there's no allegation or assertion that that statement was made by Ms. Shelton or that her abandonment of the dogs was conditioned on which pound they would be taken to or for how long they would be at the pound, nor was her abandonment. There's no allegation in here anywhere of any affirmative action or statement by Ms. Shelton to the officers that her abandonment was conditional. Now, she may very well have intended at some point to try to get these dogs back, but I think it's noteworthy that there's no allegation anywhere in the complaint that she ever did so. And so for eight days... Counsel, can you read that sentence, though, in paragraph 20? Neither plaintiff voluntarily abandoned the dogs, but only temporarily agreed they could be taken to the dog pound. The word agreed, they had to agree with someone, didn't they? Couldn't a reasonable inference be that that is what they indicated to the officers? I don't think so, Your Honor. I think the only inference you can draw from that, at best, is that the plaintiff's subjective intent in her mind was agreeing to let the dogs be taken, and in her mind, without expressing it because there's no evidence or no factual allegation anywhere, that she expressed it to anybody. So if that sentence started with the words, as told to the officers, neither plaintiff voluntarily abandoned, then they would state a claim. Is that what you're saying? No, that's not what I'm saying. In fact, Your Honor, I think if you look at... Well, that wouldn't be subjective. That would be what was communicated to the officers. Well, but that's still her subjective intent. Ah, but we look at it from the perspective of the officers, right? Isn't the reasonableness a question of what you look at it from whether a reasonable officer would think there was abandonment? Right, but you also have to look at abandonment at the time that it occurs, not days later. In other words, I think the appellant is conflating what ultimately happened to the dogs with the question of abandonment from the perspective of the officers on the scene at the time. And clearly, when you look at, again, Denny, Burbage, Garzon, Hernandez, Jones, the court has repeatedly said, look, what this individual's subjective intent was, and maybe they were going to come back and get the satchel that they discarded while running from the police, or maybe they were going to come back and get that backpack. But objectively, they abandoned it. And in this case, we know that there was no manifestation of these subjective intents later. Eight days later, the dog shows up. And in the meantime, Ms. Shelton had made no effort, no inquiry with regard to the status of the dog. But that's not in the complaint. I agree that that probably is so, but is that something we can just have you tell us and decide the case on? No, but I think you can look at the complaint itself and see that there's an allegation that that evening while sitting on the back porch, the officers drove by and shined a spotlight, and then it goes straight to eight days later the dog shows up. There's no allegation, no assertion anywhere that there was any effort or attempt made to reclaim the dog or even follow up on the dogs. I see my time is up. In fact, I'm over my time. Thank you, Your Honor. That's okay. You both went over a little bit, so there's no rebuttal time. We'll consider the case. You don't have any more time. You used up all your time. Oh, I'm sorry. No, that's okay. I thought that was my 11 minutes. It was noted there not the 15. I apologize. No, no problem. We just were so interested in asking you questions that we didn't quite get there on your rebuttal. We appreciate the arguments today, and we'll consider the case submitted, and counsel are excused. Thank you. Thank you.